# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

| | |
|---|---|
| DISH NETWORK L.L.C., | Case No. |
| Plaintiff, | |
| v. | |
| ALFA TV INC., HAITHAM MANSI a/k/a Haitham al-Heti, HISHAM MANSE IBRAHEM, NEZAR SAEED HAMMO, and MOHAMMED ABU OUN a/k/a Mohammad Abuoun, individually and together d/b/a ElafnetTV, | |
| Defendants. | |

## PLAINTIFF'S COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Plaintiff DISH Network L.L.C. ("DISH") brings this suit against Defendants Alfa TV Inc. ("Alfa TV"), Haitham Mansi a/k/a Haitham al-Heti ("Mansi"), Hisham Manse Ibrahem ("Ibrahem"), Nezar Saeed Hammo ("Hammo"), and Mohammed Abu Oun a/k/a Mohammad Abuoun ("Abuoun"), individually and together d/b/a ElafnetTV (collectively, "Defendants"), and states as follows:

## PRELIMINARY STATEMENT

1. DISH brings this suit for contributory copyright infringement because Defendants know that they are distributing a video streaming service (the "ATN/Elafnet Service") that is unlawfully retransmitting television channels exclusively licensed to DISH in the United States. Defendants provide the ATN/Elafnet Service to customers who purchase Defendants' ATN set-top boxes and service subscriptions. Defendants are materially contributing to and inducing direct copyright infringement by third-party operators of the ATN/Elafnet Service.

2. Ibrahem and Mansi started ElafnetTV in 2010, appointed Hammo as ElafnetTV's sales and marketing manager, and appointed Abuoun as ElafnetTV's general manager. For the majority of ElafnetTV's existence, Defendants' prominently referred to it in a logo on their Elafnettv.com website as the "OFFICIAL DISTRIBUTOR OF ATN."



3. ATN a/k/a Advanced TV Network was raided by Swedish authorities in 2016 and its operators charged with criminal copyright infringement for distributing unlicensed television channels, among other offenses. In June 2018, three members of ATN were convicted by a Swedish court of copyright infringement, including ATN's founder and CEO, his son and fellow ATN executive, and another associate. The three individuals were ordered to pay damages of approximately $24 million and each were sentenced to prison for one to two and a half years.[1]

4. Defendants continued to distribute the ATN/Elafnet Service to customers in the United States, even after the 2016 raid and 2018 criminal convictions against ATN's operators, and to this day refer to ElafnetTV as the "Biggest Arabic IPTV Provider in the World." However, in or around March 2018, Defendants concealed the way they offered unlicensed channels by requiring users to stream those channels from software files or apps that were either preloaded onto Defendants' ATN set-top boxes or available for download from an ATN/Elafnet Service app store. For example, the "Galaxy Pro" app is the latest app through which Defendants offer unlicensed channels to their customers. The Galaxy Pro app is preloaded onto Defendants' ATN set-top boxes and is designed to immediately provide Defendants' customers with unlicensed channels upon activation of the ATN/Elafnet Service. No user intervention aside from powering on the ATN set-top box is required to install Galaxy Pro and stream unlicensed channels.

---

[1] *See* https://torrentfreak.com/swedish-court-sentences-pirate-iptv-operators-to-prison-180710/.

5. Defendants demonstrated the willfulness of their copyright infringement by continuing to distribute the ATN/Elafnet Service that provides unauthorized access to channels exclusively licensed to DISH, despite receiving numerous demands to cease and despite the criminal copyright convictions against ATN's operators.

## PARTIES

6. Plaintiff DISH Network L.L.C. is a limited liability company organized under the laws of the State of Colorado, with its principal place of business located at 9601 South Meridian Blvd., Englewood, Colorado 80112.

7. Defendant Hisham Manse Ibrahem is an individual residing at 1751 Malon Bay Dr., Orlando, Florida 32828. Ibrahem is president of Alfa TV Inc.

8. Defendant Haitham Mansi a/k/a Haitham al-Heti is an individual, upon information and belief residing outside the United States. Mansi is vice president of Alfa TV Inc.

9. Defendant Nezar Saeed Hammo is an individual residing at 8613 Redskin Ct., Orlando, Florida 32829. Hammo is the sales and marketing manager of Alfa TV Inc.

10. Defendant Mohammed Abu Oun a/k/a Mohammad Abuoun is an individual, upon information and belief residing outside the United States. Abuoun is general manager of customer support for Alfa TV Inc.

11. Defendant Alfa TV Inc. is a Florida corporation with its principal place of business at 1751 Malon Bay Dr., Orlando, Florida 32828.

12. Ibrahem and Mansi are Alfa TV's highest-ranking officers – president and vice president, respectively – and upon information and belief jointly own Alfa TV and make the final decisions concerning Alfa TV. Ibrahem and Mansi placed Hammo in charge of sales and marketing for Alfa TV. Ibrahem and Mansi placed Abuoun in charge of customer support for Alfa TV. Ibrahem, Mansi, Hammo, and Abuoun authorize, control, participate in, and receive direct financial benefits from the infringing activities of Alfa TV as alleged herein. The acts Ibrahem, Mansi, Hammo, and Abuoun engaged in as agents of Alfa TV were within the scope of their agencies.

## JURISDICTION & VENUE

13. DISH asserts claims under the Copyright Act, 17 U.S.C. § 101 *et seq*. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338.

14. Ibrahem, Hammo, and Alfa TV reside in and conduct business in the State of Florida, and therefore, are subject to this Court's personal jurisdiction.

15. Personal jurisdiction over Mansi and Abuoun is proper in this Court because they purposefully directed their conduct towards and purposefully availed themselves of the privileges of conducting business activities within the State of Florida. Mansi incorporated Alfa TV, purchased Alfa TV's principal place of business in Florida, and conducts business in Florida as Alfa TV's vice president. Abuoun conducts business in Florida as general manager of customer support for Alfa TV, sells the ATN/Elafnet Service to numerous customers in Florida and the United States, and assists customers in Florida and the United States in using the ATN/Elafnet Service to view television channels exclusively licensed to DISH. Mansi and Abuoun cause injury to DISH in this State and in this District.

16. In the alternative, personal jurisdiction is proper against Mansi and Abuoun under Rule 4(k)(2) of the Federal Rules of Civil Procedure. Mansi and Abuoun sell and distribute the ATN/Elafnet Service that provides access to television channels exclusively licensed to DISH in the United States, including the State of Florida. This Court's exercise of jurisdiction over Mansi and Abuoun is consistent with the Constitution and laws of the United States, DISH's claims arise under federal law, and Mansi and Abuoun are not subject to the jurisdiction of the courts of general jurisdiction of any state.

17. Venue is appropriate in this Court under § 1391(b)(2) because a substantial part of the events giving rise to DISH's claims occurred in this judicial district and § 1391(b)(3) because Defendants are subject to personal jurisdiction in this judicial district. Venue is also proper in this Court under 28 U.S.C. § 1400(a) because the case involves violations of the Copyright Act.

**DISH'S COPYRIGHTS**

18. DISH is the fourth largest pay-television provider in the United States providing copyrighted programming to millions of subscribers nationwide. DISH is one of the largest providers of international television channels in the United States offering more than 400 channels in 27 different languages.

19. DISH contracted for and purchased rights for the international channels distributed on its platforms from channel owners and their agents, including Al Jazeera Media Network; Asia TV USA; B4U U.S., Inc.; Century Media Network Inc.; Geo USA Holdings, Inc. d/b/a Geo USA LLC; Hum Network Limited; International Media Distribution (Luxembourg) S.A.R.L.; MBC FZ LLC; MSM Asia Limited; National Communications Services (SMC-Pvt.) Limited; Television Media Network (Pvt) Ltd.; TV Today Network Ltd.; Soundview ATN LLC; Soundview Broadcasting LLC; and World Span Media Consulting, Inc. (collectively, the "Networks").

20. The Networks' channels include Aaj Tak; Al Hayah 1 (a/k/a Al Hayat 1); Al Jazeera Arabic News; ART Cima; ATN Bangla; ATN News; B4U Music; CBC; CBC Drama; Dunya TV; Express Entertainment; Express News; Future TV; Geo News; Geo TV; Hekayat; Hum Masala; Hum Sitaray; Hum TV; Hum World; LBC; LBCI (a/k/a LDC); MBC1; MBC Drama; MBC Kids (a/k/a MBC3); MBC Masr; Melody Classic; NTV Bangla; SAB; SET Max; Sony SET; Zee Aflam; and Zee Alwan (collectively, the "Protected Channels"). The Networks acquire copyrights in the works that air on their respective channels, including by producing the works and by assignment.

21. DISH entered into signed, written licensing agreements with Networks granting DISH the exclusive right to distribute and publicly perform the Protected Channels and works that air on the Protected Channels in the United States by means including satellite, over-the-top ("OTT"), Internet protocol television ("IPTV"), and Internet. DISH's exclusive rights were in effect at all relevant times. Many of the works that aired on the Protected Channels and for which DISH holds or held exclusive distribution and public performance rights are registered with the United States Copyright Office. (*See* Exhibit 1.) A vast number of additional, unregistered

5

copyrighted works in which DISH holds or held exclusive distribution and public performance rights also aired on the Protected Channels.  (*See* Exhibit 2.)

22. Defendants have not been and currently are not authorized by DISH to transmit, distribute, or publicly perform the Protected Channels or works that air on those channels in the United States, and DISH has received no compensation from Defendants to do so.

## DEFENDANTS' WRONGFUL CONDUCT

23. ATN was founded in Sweden in 2008.  ATN designs and develops ATN set-top boxes and operates the ATN/Elafnet Service through which ATN transmitted television programming, including the Protected Channels, to ATN/Elafnet Service users.  According to an anti-piracy professional with knowledge of ATN's business activities, at its height, ATN had around 25 employees and over 70,000 paying customers.[2]

24. Defendants have a long history of willful copyright infringement.  Ibrahem, Mansi, and another individual started ElafnetTV in 2010 to advertise, promote, sell, and distribute the ATN/Elafnet Service to customers in the United States who purchased ATN set-top boxes and service subscriptions from them and ElafnetTV.  Ibrahem and Mansi placed Hammo in charge of sales and marketing for ElafnetTV in 2010.

25. Mansi incorporated ElafnetTV in December 2011 under the name ElafnetTV LLC.  Following the June 2012 death of the other individual that started ElafnetTV, Ibrahem and Mansi took over ElafnetTV and Mansi re-incorporated it in July 2012 under the name Elaf Channel TV Inc.  ElafnetTV LLC was dissolved in September 2013.

26. ElafnetTV was owned for a time by Cloud7 Network Limited, which is a company Mansi founded in 2013 in Orlando, Florida, and of which he was CEO from 2013 to 2018.  Mansi has been vice president of ElafnetTV since at least 2013, listing his address as 1751 Malon Bay Dr.  In 2013, Mansi caused ElafnetTV to purchase two real estate properties in Orlando, Florida and then re-titled those properties in his own name.  Since at least 2014, one of those properties, 1751

---

[2] *See* https://blogs.cisco.com/sp/crack-down-on-streaming-piracy-seems-to-be-the-trend.

Malon Bay Dr., has served as the principle place of business of ElafnetTV and the residence of Ibrahem.  The phone number listed on Defendants' Elafnettv.com website is registered to Mansi.

27. Ibrahem and Mansi placed Abuoun in charge of customer support for ElafnetTV in 2013.  Abuoun sent emails using elaftv@gmail.com, which is an email address listed on Defendants' Elafnettv.com website, identifying himself as the "GM" or general manager of ElafnetTV.  Abuoun has advertised and marketed the ATN/Elafnet Service to numerous existing and potential customers in Florida and the United States, and has assisted them in using the ATN/Elafnet Service to view television channels exclusively licensed to DISH.  For example, Abuoun sent an email to DISH's investigator in Colorado, asking him to renew his ATN/Elafnet Service subscription.  Abuoun also sent emails to DISH's investigators in Florida containing ATN/Elafnet Service subscription codes, enabling them to view channels exclusively licensed to DISH.  Abuoun also explained to DISH's investigator in Colorado how to access channels exclusively licensed to DISH on the ATN/Elafnet Service.

28. DISH began sending notices of copyright infringement to Defendants and ATN concerning their ATN/Elafnet Service in November 2013.

29. ATN's founder and CEO, Hamid al-Hamid ("al-Hamid"), responded to a notice of copyright infringement from DISH and Networks in February 2015, referring to Mansi as ATN's "sales director in North and South America…who is currently in the United States."  Al-Hamid also requested that counsel for DISH and Networks meet with Mansi to "find a formula for cooperation between us…in the future" and that Mansi "has full authority from us."

30. Mansi incorporated ElafnetTV under the name Alfa TV Inc. in December 2016.  Elaf Channel TV Inc. was dissolved in September 2017.

31. In 2016, police raided ATN's offices in Sweden and al-Hamid, his son, and another operator of ATN were charged with criminal copyright infringement, among other offenses.  In June 2018, the three men were convicted by a Swedish court of copyright infringement, ordered to pay millions in damages, al-Hamid was sentenced to prison for two and a half years and the other two sentenced to prison for one year.  According to Nordic Content Protection, the anti-piracy

industry group for Nordic broadcasters that originally filed the complaint against ATN in 2016, ATN's "activities consist of appropriating the reception and then decoding, packing and re-transmitting television broadcasts to its own paying clientele. The pirate network has provided its customers with access to illegal pirate streams of over 2,000 channels, with a focus on channels emanating from the Middle East and Turkey."[3]

32.     Defendants have a close relationship with ATN and al-Hamid. Hammo and al-Hamid are friends on Facebook and Mansi and al-Hamid appear together in photos posted to al-Hamid's Facebook account. In the following photo, al-Hamid comments that he is pleased Mansi has come to visit him in Amman, Jordan.



---

[3] *See* https://www.ncprotection.com/index.php/2018/07/03/landmark-ruling-by-swedish-court/#:~:text=Speaking%20about%20the%20ruling%20Anders,industrial%20piracy%20perpetrated%20by%20ATN.&text=The%20damages%20and%20prison%20sentences,piracy%20on%20this%20scale%20causes.

33. Despite the criminal convictions, ATN has continued to operate[4] and Defendants likewise have continued to advertise, promote, sell, and distribute the ATN/Elafnet Service to customers in the United States, thereby providing them with access to the Protected Channels. Around the time their business partner and supplier al-Hamid was convicted of copyright infringement, Defendants began referring to ElafnetTV on their Elafnettv.com website as a "<u>LEGAL</u> ARABIC IPTV CHANNELS PROVIDER" and altered their logo to remove the prior reference to ATN.

34. Defendants' Elafnettv.com website has stated they are the "official distributor of ATN in USA market," they have "more than 60 resellers covered all over the United States," they are the "Biggest Arabic IPTV Provider in the World," and "[w]ith the new receiving technology right now we supply the largest number of channels in the USA…more than 3000 channels…."

35. Despite their new logo and tagline, Defendants are still engaged in copyright infringement. The only major change to their business has been the means by which Defendants' ATN/Elafnet Service provides customers with access to the Protected Channels. Around March 2018, Defendants attempted to conceal the way they offered the Protected Channels by requiring their customers to stream those channels from software files or "apps" that were either preloaded onto ATN set-top boxes or available for download from a proprietary ATN/Elafnet Service app store.

36. Hammo explained in detail the new way Defendants were providing access to the Protected Channels in an April 2018 discussion with a prospective reseller. During that discussion, Hammo acknowledged that DISH has exclusive rights in numerous international channels, including popular Arabic channels such as MBC, and that ElafnetTV is not authorized to transmit these channels in the United States. However, Hammo said, "we came up with a workaround solution" by providing the unlicensed channels through certain "hidden apps." To get around DISH's rights, Hammo said, the customer has to download the hidden apps, but they still use their

---

[4] According to a 2018 press release, ATN is now based in the UAE. *See* https://www.pr.com/press-release/744454.

ElafnetTV login for access. Hammo made clear that although the ATN set-top boxes ran on Android-based software, the hidden apps were not available through the Google Play Store and may only be downloaded through an app store exclusive to their ATN/Elafnet Service.

37. Defendants advertise and promote the ATN/Elafnet Service as a source for the Protected Channels. In or about March 2018, a DISH investigator who had registered his email address with ElafnetTV after making a purchase from Defendants in 2017 and 2018, received an email from ATN Media Group, telling him to "TRY OUR SERVICE FOR FREE" and that there is "Amazing Arabic content in your ATN box!" The email contained logos for MBC, MBC Drama, and MBC Masr.



38. The DISH investigator contacted ATN, inquiring about how to receive the channels identified in the advertisement, and was told by ATN that he needed to contact ElafnetTV, whose representatives would be able to fix their problems and answer any questions. The DISH investigator then contacted ElafnetTV at the phone number listed on Defendants' Elafnettv.com website and engaged in the following discussion with Abuoun:

> **Investigator**: I received an email from ATN Network saying that they do have MBC channels however using my new STB [set-top box], I was not able to get any MBC channels. Can you help me please to get the channels?

>**Abuoun**: Sure, don't worry. We provide those channels for our customers and I'll …support you to get them. Can you please give me your Box S/N [serial number]?
>**Investigator**: yes sure, [gives serial number].
>**Abuoun**: Please put off the box for 5 minutes and after put it on and you will find a new application called "Soccer TV." You can find this application through "My Apps" button and then select the Soccer TV app. You will be able to get all the Arabic and Sports channels.
>**Investigator**: Thanks Sir.
>**Abuoun**: If for some reasons, you can't find the Soccer TV app…you can download it from our store: "App Store+." Try to access…this store and you will be able to download and install Soccer TV application.
>**Investigator**: Thanks Sir, much appreciated.
>**Abuoun**: Anytime, if you got an issue, just call me back.

39. The DISH investigator followed Abuoun's directions, waiting five minutes before powering his ATN set-top box on again, and as Abuoun said, a new section appeared on the main menu called "App Store+."



11

40. The App Store+ provided a number of apps for Defendants' customers to download onto their ATN set-top boxes, including the Soccer TV app. When Defendants' customers downloaded Soccer TV from the App Store+ they were immediately provided with access to the Protected Channels. Defendants' customers were not required to enter any additional activation code. Rather, Soccer TV was activated using the same subscription credentials used to activate the ATN/Elafnet Service, meaning that Defendants are responsible for controlling access to the Soccer TV app.



41. Also in or about March 2018, another "hidden app" appeared on ATN set-top boxes called "Galaxy TV." Network analysis of Galaxy TV indicates that it was a rebranded version of the "Red IPTV" streaming service, which was determined in previous litigation to be transmitting channels exclusively licensed to DISH without authorization.[5]

---

[5] *See DISH Network L.L.C. v. Mo' Ayad Al Zayed Trading Est.*, No. 4:17-cv-03909, Dkts. 29, 37 (S.D. Tex. 2017).

42. During Hammo's April 2018 discussion with a prospective reseller, he identified the Galaxy TV app as one of two "hidden apps" through which Defendants would "get around" DISH's exclusive rights and still be able to provide the most popular unlicensed channels to Defendants' customers. During this discussion, Hammo also stated that ElafnetTV is a "family business," he was "in charge," and they had approximately 100 resellers of the ATN/Elafnet Service in the United States.

43. Defendants profit from their scheme by selling ATN set-top boxes and corresponding ATN/Elafnet Service subscriptions, which retail from $140 for a one-year subscription and from $195 for a one-year subscription and set-top box package.

44. In or about May 2018, DISH's investigator purchased an ATN V Orient-model set-top box and 12-month subscription from Defendants through their Elafnettv.com website for $195. The DISH investigator contacted Defendants at the phone number listed on the website and, upon information and belief, spoke with Abuoun, who proceeded to complete the transaction over the phone. Upon completion of the order, the investigator received an email containing a subscription code for the Galaxy TV app. To activate the Galaxy TV app, Defendants' customers needed only to select the app from the "My Apps" menu of the ATN set-top box and then enter the subscription code provided by Defendants. Protected Channels were observed during testing of the Galaxy TV app.

45. In or about June 2020, DISH's investigator purchased another ATN set-top box from Defendants through their Elafnettv.com website under the item description "ATN IPTV Box + 12 Months Subscription." The ATN set-top box that Defendants shipped to complete this order came in a box labeled, "ATN TURKISH SMART TV BOX." When DISH's investigators turned on the ATN set-top box, the first images that appeared on the screen were ATN Network logos. In less than 30 seconds, an application called "Galaxy Pro" was automatically loaded and provided access to the Protected Channels. No user intervention aside from powering on the ATN set-top box was required to configure or launch the Galaxy Pro app. The app was configured to start automatically by itself upon powering on the ATN set-top box.

46. The return address for ATN set-top boxes that Defendants shipped to their customers was Hasan Saffar, PO Box 781606, Orlando, FL 32878. Saffar is an individual residing in Orlando, Florida who has been involved with "customer support" for ElafnetTV since 2012. Upon information and belief, Mansi, Ibrahem, and Hammo engaged Saffar to, among other things, ship ATN set-top boxes to Defendants' paying customers in the United States and to receive and process returns from an Orlando PO Box.

47. The Protected Channels were observed during testing of the ATN set-top boxes and ATN/Elafnet Service subscriptions purchased from Defendants' Elafnettv.com website, including the "Soccer TV," "Galaxy TV," and "Galaxy Pro" apps.

48. Defendants have actual knowledge that the transmission of the Protected Channels on their ATN/Elafnet Service infringes DISH's copyrights. For example, in April 2018 Hammo acknowledged DISH's exclusive rights in popular international channels, such as MBC. DISH and Networks also sent at least 20 notices of infringement to Defendants between November 2013 and the filing of this Complaint, demanding that they cease transmitting the Protected Channels identified in the notices, or otherwise cease distributing, selling, and promoting the ATN/Elafnet Service in the United States.

49. DISH and Networks sent at least 90 additional notices of infringement to ATN between November 2013 and the filing of this Complaint, demanding that they cease transmitting the Protected Channels identified in the notices on the ATN/Elafnet Service in the United States. Upon information and belief, at least some of these notices were forwarded to or discussed with Defendants.

## CLAIM FOR RELIEF

### Count I

**Inducing and Materially Contributing to Copyright Infringement Under 17 U.S.C. § 501**

50. DISH repeats and realleges the allegations in paragraphs 1-49.

51. DISH is a copyright owner under 17 U.S.C. § 106 because DISH holds, or held during the relevant time period, the exclusive rights to distribute and publicly perform in the United

States, by means including satellite, OTT, IPTV, and Internet, the programs that make up the Protected Channels.

52. The programs that make up the Protected Channels are original audiovisual works fixed in a tangible medium of expression, and are therefore copyrightable subject matter. DISH's copyrights in programs that aired on the Protected Channels arise under laws of nations other than the United States that are parties to copyright treaties with the United States, including the United Arab Emirates, Qatar, Egypt, Lebanon, Pakistan, India, and Bangladesh where the programs were authored and first published. Under 17 U.S.C. §§ 101, 411, the programs that make up the Protected Channels are non-United States works and, therefore, registration with the United States Copyright Office is not a prerequisite to filing a copyright infringement action with respect to these works.

53. DISH's exclusive rights to distribute and publicly perform the Protected Channels and programs that make up the Protected Channels are directly infringed by the unauthorized transmission of these programs to ATN/Elafnet Service users who accessed the programs using the "My Apps" menu and "Soccer TV," "Galaxy TV," and "Galaxy Pro" apps.

54. Defendants materially contributed to this infringement of DISH's exclusive distribution and public performance rights by, among other things, providing ATN/Elafnet Service users with access to the Protected Channels and the programs that make up the Protected Channels, despite having the ability to prevent such access. Defendants also induced the infringement of DISH's exclusive distribution and public performance rights by, among other things, creating or expanding the audience for that infringement in the United States.

55. Defendants sell the ATN/Elafnet Service to customers in the United States who purchase their ATN set-top boxes and service subscriptions. The ATN/Elafnet Service connects users to unauthorized streams of the Protected Channels and the programs that make up the Protected Channels. The ATN set-top boxes sold by Defendants were preconfigured such that users could immediately access the Protected Channels using the My Apps menu and Galaxy Pro app, by simply powering on the device and without the need for manually locating and installing

any additional software or apps. Abuoun, at the direction or with the authorization of or ratification by Ibrahem and Mansi, also instructed Defendants' customers on how to locate, install, and activate the Soccer TV and Galaxy TV apps, which provided users with access to the Protected Channels.

56. Defendants advertised the ATN/Elafnet Service as a means of accessing the Protected Channels and the programs that make up the Protected Channels. Defendants intended that the ATN/Elafnet Service be used to access the Protected Channels and the programs that make up the Protected Channels, and they promoted, encouraged, and facilitated using the ATN set-top boxes and service subscriptions in this manner.

57. Defendants had actual knowledge that the transmission of the Protected Channels and the programs that make up the Protected Channels to ATN/Elafnet Service users infringed DISH's exclusive distribution and public performance rights.

58. Defendants could have taken simple measures to prevent infringement of DISH's copyrights when they received notices of infringement from DISH and Networks, such as ensuring that their ATN set-top boxes were not pre-configured to access the Protected Channels prior to sale by either not loading or by removing the software files or apps used to access to the Protected Channels. Defendants could have also blocked or caused ATN to block the ATN/Elafnet Service from accessing servers, URLs, and apps that were identified to be streaming the Protected Channels or the content that airs on the Protected Channels. Defendants could have also easily refrained from providing instructions to their customers on how to locate, install, and activate software files and apps which provided users with access to the Protected Channels.

59. The infringement of DISH's rights in each program constitutes a separate and distinct act of copyright infringement.

60. Ibrahem, Mansi, Hammo, and Abuoun are jointly and severally liable for each act of infringement of Alfa TV because they personally directed, authorized, supervised, or participated in, and financially benefited from such infringing conduct as alleged herein.

61.     Defendants' actions were willful, malicious, intentional, and purposeful, and in disregard of and with indifference to the rights of DISH.

62.     Unless enjoined by the Court, Defendants will continue to engage in acts causing substantial and irreparable injury to DISH that includes damage to its reputation, loss of goodwill, and lost sales, for which there is no adequate remedy at law.

## **PRAYER FOR RELIEF**

WHEREFORE, DISH prays for judgment against Defendants as follows:

A.      For a grant of permanent injunctive relief under 17 U.S.C. § 502 restraining and enjoining Defendants, and any of their officers, agents, servants, employees, attorneys, or other persons acting in active concert or participation with any of the foregoing that receives actual notice of the order (including, without limitation, resellers of the ATN/Elafnet Service), from:

   1.   transmitting, streaming, distributing, or publicly performing in the United States, with any ATN set-top box, ATN/Elafnet Service subscription, Galaxy Pro, Galaxy TV, or Soccer TV app, or any other device, service, application, or process, the Protected Channels or any of the programming that comprises any of the Protected Channels;

   2.   distributing, selling, providing, or promoting any product or service in the United States, including any ATN set-top box, ATN/Elafnet Service subscription, Galaxy Pro, Galaxy TV, or Soccer TV app, or other application, that comprises the whole or part of a network or service for the distribution or public performance of the Protected Channels or any of the programming that comprises any of the Protected Channels; and

   3.   advertising, displaying, or marketing any ATN set-top box, ATN/Elafnet Service subscription, Galaxy Pro, Galaxy TV, or Soccer TV app, or other device, service, or application in connection with the Protected Channels or any of the programming that comprises any of the Protected Channels.

   4.   inducing or contributing to anothers' conduct that falls within 1, 2, or 3 above.

B. For 107 or more registered works, statutory damages as awarded by the Court up to $150,000 per registered work infringed under 17 U.S.C. § 504(c), or the Defendants' profits attributable to the infringement of those registered works under 17 U.S.C. § 504(b).

C. For unregistered works, an award of Defendants' profits attributable to the infringement of each unregistered work under 17 U.S.C. § 504(b).

D. For DISH's attorneys' fees and costs under 17 U.S.C. § 505.

E. For impoundment and disposition of all infringing articles under 17 U.S.C. § 503.

F. For an order permanently transferring each domain name that Defendants used in connection with the infringement to DISH.

G. For pre- and post-judgment interest on all monetary relief, from the earliest date permitted by law at the maximum rate permitted by law.

H. For such additional relief as the Court deems just and equitable.

Dated: October 14, 2020

    /s/ James A. Boatman, Jr.
James A. Boatman, Jr. (Trial Counsel)
Florida Bar No. 0130184
BOATMAN RICCI, PA
3021 Airport-Pulling Road North, Suite 202
Naples, Florida 34105
Telephone: (239) 330-1494
Email: jab@boatmanricci.com

Stephen M. Ferguson (*pro hac vice* to be filed)
HAGAN NOLL & BOYLE, LLC
Two Memorial City Plaza
820 Gessner, Suite 940
Houston, Texas 77024
Telephone: (713) 343-0478
Facsimile: (713) 758-0146
Email: stephen.ferguson@hnbllc.com

Attorneys for Plaintiff DISH Network L.L.C.