# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

**DISH NETWORK L.L.C.**,

    **Plaintiff,**

v.                                                                              Case No: 6:20-cv-1896-PGB-DCI

**ALFA TV, INC., HAITHAM MANSI, HISHAM MANSE IBRAHEM, NEZAR SAEED HAMMO and MOHAMMED ABU OUN,**

    **Defendants.**

## ORDER

Now before the Court is Plaintiff's Renewed Motion for Court-Ordered Service and for Extension of Time to Serve Mohammed Abu Oun. Doc. 61 (the Motion). None of the defendants who have appeared in this case have opposed the Motion. For the reasons that follow, the Court finds that Plaintiff's Motion is due to be denied.

**I.    Background**

On October 14, 2020, Plaintiff filed a single-count complaint against Defendants Hisham Manse Ibrahem (Ibrahem), Haitham Mansi a/k/a Haitham al-Heti (Mansi), Nezar Saeed Hammo (Hammo), Mohammed Abu Oun a/k/a Mohammad Abuoun (Abuoun), and Alfa TV Inc for allegedly inducing and materially contributing to copyright infringement. Doc. 1 (the Complaint). On April 9, 2011, Plaintiff filed a motion requesting that the Court permit it to effect service upon Defendant Mansi via international mail or courier "at [Mansi's] residences in Iraq and Sweden," through email addresses, and through local counsel; Plaintiff also requested that the Court permit it to effect service upon Defendant Abuoun via international mail or courier "at [Abuoun's]

brother's residence in Jordan," through email addresses, and through local counsel. Doc. 38 (the First Motion). In the First Motion, Plaintiff also requested that the Court grant it an additional 60-day extension of time to serve Defendants Mansi and Abuoun. *Id.*

On May 24, 2021, the Court entered an order granting the First Motion in part and denying it in part. Doc. 40. The Court declined to authorize "other means" of service on Defendants Mansi or Abuoun pursuant to Federal Rule of Civil Procedure 4(f)(3), but the Court granted Plaintiff's request for an extension of time. *See id.*

On June 18, 2019, Plaintiff filed a declaration of service with respect to Defendant Mansi. Doc. 49. Defendant Mansi has since filed an answer to the Complaint. Doc. 62.

On June 10, 2021, Plaintiff filed a motion for issuance of letters rogatory with respect to Defendant Abuon. Doc. 44. On June 23, 2021, the Court entered an order granting that motion (Doc. 55); the Court attached the requested letters rogatory to that order (Doc. 55-1). In that order, the Court stated, "[i]t is the responsibility of the Plaintiff, as the requesting party, to bring this application for enforcement to the Ministry of Justice of the Hashemite Kingdom of Jordan" and further that "[i]t is also Plaintiff's responsibility to attach the unredacted financial information for the Kingdom of Jordan to the Letters Rogatory prior to their submission to the State Department for transmission." Doc. 55 at 2, n.2

On July 22, 2021, Plaintiff filed the Motion that is now before the Court. Doc. 61. In the Motion, Plaintiff requests that the Court permit it to effect service upon Defendant Abuon—via publication in Jordan, email, United States counsel, and internet publication—pursuant to Rule 4(f)(3). *See id.* In the Motion, Plaintiff does not mention the letters rogatory. *See id.*

**II.      Overview of Applicable Law**

Rule 4(f) provides as follows:

Serving an Individual in a Foreign Country.  Unless federal law provides otherwise, an individual—other than a minor, an incompetent person, or a person whose waiver has been filed—may be served at a place not within any judicial district of the United States:

    (1) by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents;

    (2) if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice:

        (A) as prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction;

        (B) as the foreign authority directs in response to a letter rogatory or letter of request; or

        (C) unless prohibited by the law of the foreign country, by

            (i)      delivering a copy of the summons and of the complaint to the individual personally; or

            (ii)     using any form of mail that the clerk addresses and sends to the individual and that requires a signed receipt; or

    (3) by other means not prohibited by international agreement, as the court orders.

Fed. R. Civ. P. 4 (f).  Whether or not to devise "other means" of service of process under Rule 4(f)(3) is a decision committed to the district court's discretion.  *See Prewitt Enters., Inc. v. Org. of Petroleum Exporting Countries*, 353 F.3d 916, 926-27 (11th Cir. 2003).  Before devising "other means" of service on a foreign defendant, the court should consider whether the proposed means of service would "constitute a substantial affront" to the law of the country in which service is to be made.  *See id.* at 927.  "*[A]n earnest effort* should be made to devise a method of communication that is *consistent with due process* and *minimizes offense to foreign law*."  *Id*. (citing Advisory Committee Notes to Fed. R. Civ. P. 4(f)(3)).

### III.     Discussion

Here, Plaintiff seeks an order authorizing the following means of service: (1) publication in Jordan; (2) email; (3) United States counsel; and (4) publication on the internet. Doc. 61 at 2. As an initial matter, Jordan is not a signatory to the Hague Convention and does not appear to be party to any international agreement governing such service. *See Convention Done at the Hague Nov. 15, 1965*, T.I.A.S. No. 6638 (Feb. 10, 1969).[1] Thus, the Court finds that the proposed methods of service are not prohibited by international agreement.

The Court must next consider whether the proposed means of service would constitute a "substantial affront" to Jordanian law. *See Prewitt*, 353 F.3d at 927. Plaintiff appears to make three general arguments on this point: (1) the proposed means of service are not expressly prohibited by Jordanian law, so such service does not constitute a substantial affront to Jordanian law; (2) service by publication is expressly authorized by Jordanian law, so service by publication is not a substantial affront to Jordanian law; and (3) Plaintiff has made an earnest effort to devise methods of service that minimize offense to foreign law, such that even if the Court found that the proposed means of service were prohibited by Jordanian law, such service is appropriate under Rule 4(f)(3). *See* Doc. 61. The Court will address each argument in turn.

#### A.   Proposed Means of Service Not Expressly Prohibited

Plaintiff asserts that service via email, United States counsel, and internet publication are appropriate here because such service is not expressly prohibited under Jordanian law. Doc. 61 at 4. Plaintiff states that no provision "speaks directly as to how or how not to serve a foreign lawsuit in Jordan." *Id.* at 4. However, it is not clear to the Court whether Jordanian law specifically

---

[1] *See also Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters*, signatory status table available at: https://www.hcch.net/en/instruments/conventions/publications1/?dtid=1&cid=17.

prohibits serving a Jordanian resident by email, foreign counsel, or internet publication with a complaint filed in a foreign jurisdiction.

The only evidence now before the Court (which Plaintiff attached to the Motion) are "an English version of the Jordanian Civil Procedure law . . . governing service of process for cases filed in Jordan" (Doc. 61-2, the CPL) and the declaration of Sharif Ali Zu'bi, which was originally offered in support of plaintiff Fatima Lagayan's motion for court-ordered service upon a foreign defendant in *Lagayan v. Odeh*, 318 F.R.D. 208 (D.D.C. 2016).  Doc. 61-2 (the Declaration).

In the Declaration, Mr. Zu'bi stated that "[s]ervice in a case heard before a court in the United States of America *can only be effected* upon a counterparty who resides in Jordan via Diplomatic channels."  Doc. 61-2 at ¶ 33 (emphasis added); *see also id.* at ¶ 14 ("As it related to out-of-jurisdiction (international) Service, the CPL only provides for one (1) method of Service, namely Service via Diplomatic Channels.").  The court in *Lagayan* quoted this exact excerpt from the Declaration and stated that "[o]ne way to read Mr. Zu'bi's affidavit is that, under Jordanian law, the *exclusive* means of serving a complaint filed in the United States against a person residing in Jordan is through diplomatic channels."  318 F.R.D. 208, 209 (D.D.C. 2016).  The *Lagayan* court concluded that, without further clarification, it could not find that service of a United States complaint by another means was not specifically forbidden under Jordanian law.  *See id.*  While *Lagayan* is not binding on this Court, it is both relevant and persuasive.

Here, the Court has no reason to doubt Mr. Zu'bi's expertise[2] or his opinion, and Plaintiff does not argue that the Court should do so.  Furthermore, the Court agrees that one way to read

---

[2] The Court notes that, at the time of the Declaration, Mr. Zu'bi was a senior partner at a Jordanian law firm and had been a practicing lawyer in Jordan for over twenty-five years.  Doc 61-2 at ¶¶ 1, 3.  Mr. Zu'bi had also served, in Jordan, as the Minister of Industry and Trade, as the Minister of Justice, as a senator in the Jordanian Upper House of Parliament, and as a member of the Senate's Legal Committee and the Higher Council for the Interpretation of the Constitution.  *Id.* at ¶¶ 4-5.

the Declaration is that, under Jordanian law, service through diplomatic channels is the exclusive means of serving a complaint filed in the United states against a person residing in Jordan. Plaintiff's argument to the contrary is conclusory and unsupported. Plaintiff simply states that "*Lagayan*'s presumption that Jordan prohibits all methods of serving foreign lawsuits except through diplomatic channels is incorrect" (Doc. 61 at 10) and offers Plaintiff's own interpretation of the CPL—that the CPL "governs service of process only for cases filed in Jordan," and thus neither expressly permits nor prohibits methods of service for cases filed abroad. *See* Doc. 61 at 2; 9 (citing CPL Article 2). However, Plaintiff does not cite its own expert, offer any credentials that suggest to the Court that Plaintiff (or counsel) is somehow qualified to offer an expert opinion on Jordanian law, cite any relevant authority, or otherwise support its argument.

Accordingly, the Court finds that, given the Declaration and without further clarification, Plaintiff has failed to establish whether service of a United States complaint via email, United States counsel, and internet publication is specifically forbidden under Jordanian law. Thus, Plaintiff's argument that service via email, United States counsel, and internet publication does not constitute a substantial affront to Jordanian law because those methods of service are not expressly prohibited by Jordanian law, fails.

B. **Service by Publication Expressly Authorized**

Plaintiff asserts that service by publication in two Jordanian newspapers is proper under Rule 4(f)(3) "as expressly authorized under Jordanian law." *See* Doc. 61 at 3. Plaintiff appears to argue that because service by publication is appropriate for domestic cases in Jordan, service by publication for an international case does not constitute a substantial affront to Jordanian law. *See id.* at 3-4. The Court rejects this argument because service by publication in Jordan is only

expressly authorized when certain other means of service are impossible, and Plaintiff has not demonstrated that the other means of service (provided for in the CPL) are impossible here.

The CPL provides as follows:

> **If the court finds out that it is impossible to serve the papers according to the procedures stipulated herein**, it can decide to do the service by means of publishing an announcement in two local dailies. However, the announcement must include a notice to have the person to be served report to the Clerk Bureau of the Court in order to receive documents (if any).

*See* Doc. 61-2 at 5. Plaintiff characterizes this provision as "specifically authoriz[ing] service through publication for cases filed in Jordan, provided other means of service described in the CPL are 'impossible.'" Doc. 61 at 3. Plaintiff then states that Plaintiff need not show the impossibility of other service methods before selecting publication "because this case was not filed in Jordan and therefore not subject to enforcement by the CPL." *Id.* at 3-4. The Court recognizes that Plaintiff need not necessarily serve process according to Jordanian law, and thus need not necessarily adhere to the CPL. However, Plaintiff's apparent argument here is that service by publication is not a substantial affront to Jordanian law because, in domestic cases, such service is expressly provided for by the CPL. This argument fails because, under a plain reading of the CPL and according to Plaintiff's own characterization of the relevant provision, service via publication is authorized under the CPL only when certain other methods of service prove impossible. *See* Doc. 61-2 at 5; Doc. 61 at 3.

Plaintiff does argue that it can show the impossibility of the other service methods "even though it need not do so," because Plaintiff does not have Defendant Abuoun's address. *See* Doc. 61 at 4. Plaintiff asserts that "it is virtually impossible that [Plaintiff] will manage to serve Abuoun through other methods in the CPL because personal service, co-resident service, service by attachment, and service through diplomatic channels all require Abuoun's address." *Id.* However,

Plaintiff does not mention the letters rogatory issued by this Court—at Plaintiff's request—to solve precisely the problem Plaintiff asserts creates this "impossibility." *See* Doc. 61. In its motion for issuance of those letters, Plaintiff stated, "[a] letter rogatory is necessary to ascertain Abu Oun's address and to serve him through diplomatic channels authorized by Jordan law . . . Issuance of the letter rogatory will permit [Plaintiff] to obtain Abu Oun's address from his bank in Jordan and to have the Ministry of Justice of Jordan serve Abu Oun as authorized by Jordan Law." Doc. 44 at 5.

The Court is baffled by Plaintiff's failure to mention the letters rogatory, which would (1) provide Plaintiff with an address for Defendant Abuoun; and (2) allow service through diplomatic channels. The letters rogatory appear to render other means of service under the CPL at least "possible." Plaintiff does not offer any argument to the contrary. *See* Doc. 61. Thus, Plaintiff's apparent argument that service by publication here is "authorized" by Jordanian law, and thus does not constitute a substantial affront to Jordanian law, fails. With no persuasive argument to the contrary, the Court concludes that service via publication without demonstrating that other means of service are impossible—when that is precisely what Jordanian law requires—would not minimize offense to Jordanian law.

### C. Earnest Effort to Devise Methods of Service that Minimize Offense to Jordanian Law

Plaintiff argues that, even if the Court "read[s] the CPL as prohibiting all methods of service of a foreign lawsuit in Jordan except through diplomatic channels," Plaintiff's proposed methods of service are still appropriate under Rule 4(f)(3) because Plaintiff made an earnest effort to devise methods of service that minimize offense to Jordanian law. Doc. 61 at 11.

First,[3] Plaintiff states that counsel researched and reviewed Jordanian service of process law and selected methods held not to constitute an affront to foreign law. *Id.* However, Plaintiff has not provided the Court with any evidence regarding the propriety of the proposed methods of service under Jordanian law—Plaintiff has attached the CPL and the Declaration, neither of which suggest that the proposed methods of service are appropriate here. To the extent counsel researched and reviewed Jordanian law and found support for its assertion that the proposed methods of service do not constitute an affront to such law, counsel should have referenced that authority in—or attached that authority to—the Motion.[4]

---

[3] Prior to this "first" argument, Plaintiff argues that this case is distinguishable from *Prewitt Enterprises, Inc. v. Organization of Petroleum Exporting Countries*, 353 F.3d 916, 921, 927 (11th Cir. 2003). Plaintiff argues that this case is distinguishable from *Prewitt* because "Jordanian law does not expressly authorize or prohibit methods of service of foreign lawsuits." Doc. 61 at 9. Plaintiff concludes that "[t]his case is governed by the Federal Rule of Civil Procedure – and not the CPL – and therefore Jordanian law does not expressly authorize or prohibit any specific method of serving the complaint and summons." *Id.* The meaning (or rationale) of Plaintiff's conclusion is not clear to the Court; nevertheless, the Court acknowledges the general principle set forth in *Prewitt* that service was appropriately denied as a "substantial affront" where the means of service request was prohibited by foreign law. The Court also understands Plaintiff's general argument here to be that this case is distinguishable from *Prewitt* because the means of service requested are not explicitly prohibited by Jordanian law. However, Plaintiff's argument on this point is not persuasive. Plaintiff has failed to establish that the means of service requested are not prohibited by Jordanian law. Further, to the extent *Prewitt* actually stands for the proposition that "the Court may authorize alternative service, unless it is expressly prohibited by foreign law, and even then, 'facts and circumstances' may warrant service" (Doc. 61 at 9 (citing *Prewitt*, 353 F.3d at 928 n. 1)), Plaintiff has not established any "facts and circumstances" here that convince the Court that alternate service is warranted.

[4] Plaintiff does cite a case where the court authorized service on a Jordanian defendant by email. *See id.* (citing *U.S. ex rel. Barko v. Halliburton Co.*, 952 F. Supp. 2d 108, 116 (D.D.C. 2013)). *Barko* is not binding, and the Court is not persuaded that its outcome should control here. Doc. 40 at 4 n.1. In particular, in an order not provided, or cited, to the Court here, the court in *Barko* had already found that the plaintiff showed good cause to serve a Jordanian defendant via email prior to issuing the decision cited by Plaintiff. Additionally, the *Barko* court stated that it "took foreign law into consideration and limited any offense to Jordanian law." 952 F. Supp. 2d at 116-117. Here, Plaintiff has not shown good cause. Further, the Jordanian law offered for this Court to consider is the CPL itself (which does not authorize service via email) and the Declaration, which

Second, Plaintiff states that Plaintiff "selected at least two service methods—United States counsel and publication on the internet—that will not to be effected within Jordan's borders, thereby minimizing offense to the Kingdom's territorial sovereignty," that "public policy strongly favors permitting service through alternative means in this case," and that requiring Plaintiff to serve Defendant Abuoun through diplomatic channels would "would undercut U.S. copyright law protections by preventing DISH from stopping domestic infringement fomented from abroad." Doc. 61 at 12.  None of these statements detail any earnest efforts to minimize offense to Jordanian law, and the Court does not otherwise find them persuasive.

Third, and finally, Plaintiff does not mention any earnest effort as it relates to the letters rogatory.  The Court granted Plaintiff's request for letters rogatory—so that Plaintiff could effect service pursuant to Jordanian law—and, again, Plaintiff does not mention those letters at all in its request that the Court authorize other means of service.  Plaintiff does not explain how obtaining letters rogatory that would allow Plaintiff to effectuate service as authorized by Jordanian law, and then not serving those letters, amounts to an earnest effort to minimize offense.  Under these circumstances, the Court cannot find that Plaintiff has made the requisite earnest effort to minimize offense to foreign law; accordingly, the Court need not consider whether Plaintiff made an earnest effort to "devise a method of communication that is consistent with due process. . . ." *Prewitt*, 353 F.3d at 927 ("*[A]n earnest effort* should be made to devise a method of communication that is *consistent with due process* and *minimizes offense to foreign law*.").

---

explicitly states: "For the avoidance of doubt, Service via facsimile (or e-mail) is not recognized under Jordanian law and, accordingly, considered invalid by the courts of Jordan." Doc. 61-2 at ¶ 40.  Thus, taking the foreign law, facts, and circumstances available on this record into account, the Court cannot find that service by email would not limit any offense to Jordanian law.

IV.  **Conclusion**

Here, Plaintiff has not persuasively argued that any of the proposed means of service should be authorized because they comply with the CPL.  Nor has Plaintiff persuasively argued that any of the proposed means of service are not prohibited by the CPL.  Finally, Plaintiff has not even addressed the letters rogatory, which would allow Plaintiff to serve process either via diplomatic channels or according to the CPL.  Under these circumstances, the Court concludes that it is not appropriate to authorize the proposed means of service on Defendant Abuoun.  However, the Court finds Plaintiff's request for an extension of time well-taken.

Accordingly, it is **ORDERED** that the Motion (Doc. 61) is **GRANTED in part** and **DENIED in part** such that:

1. The Motion (Doc. 61) is **DENIED** to the extent it seeks an order authorizing alternative means of service on Defendant Abuoun; and

2. The Motion (Doc. 61) is **GRANTED** to the extent it seeks an extension of time to serve Defendant Abuoun; the deadline to serve this Defendant is extended 90 days from the date of this Order.

**ORDERED** in Orlando, Florida on September 3, 2021.

DANIEL C. IRICK
UNITED STATES MAGISTRATE JUDGE